IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TITLEMAX OF ALABAMA, INC., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) CASE NO. 2:23-cv-169-ECM |
| | ) [WO] |
| HAZEL MARIE ROBY, | ) |
| | ) |
| Appellee. | ) |

**MEMORANDUM OPINION AND ORDER**

This appeal concerns Hazel Marie Roby's ("Roby") prepetition conduct in renewing her pawn agreement with TitleMax of Alabama, Inc. ("TitleMax"), hours before filing for Chapter 13 bankruptcy protection that same day.  After Roby filed for bankruptcy protection and submitted her proposed plan, TitleMax objected, claiming that Roby lacked good faith in proposing her plan.  Following an evidentiary hearing, an initial ruling, an appeal, and a subsequent status conference, the bankruptcy court overruled TitleMax's objection and confirmed Roby's proposed plan.  This appeal followed.

**JURISDICTION**

The bankruptcy court's confirmation of a Chapter 13 plan is a final order. *See Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").  The district court has jurisdiction to hear appeals from all final orders of the bankruptcy court. 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

In an appeal of a bankruptcy court decision, the district court sits as an appellate court. *In re Williams*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). The district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and conclusions of law under the *de novo* standard. *In re Piazza*, 719 F.3d 1253, 1260 (11th Cir. 2013).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying facts behind this appeal are not in dispute. Roby entered an initial pawn agreement with TitleMax on October 2, 2020 on a 2013 BMW 7-Series ("the vehicle") for $2,500.00. Under the terms of the pawn agreement, Roby could redeem her vehicle by paying $2,774.75 on or before November 11, 2020, the maturity date. If Roby did not pay the redemption price by the maturity date, TitleMax had the option to enter a new pawn transaction with Roby by "renewing" her pawn. If the pawn agreement was not renewed, Roby had an additional thirty days to redeem the vehicle in accordance with the Alabama Pawnshop Act's statutory redemption period. *See* Ala. Code. § 5-19A-10(b). If Roby did not redeem the vehicle within the thirty-day statutory redemption period, title and complete ownership would be forfeited to TitleMax.

Clause 22(j) of the initial pawn agreement between Roby and TitleMax states, "By signing this Agreement, Pledgor represents, warrants, acknowledges and agrees as follows . . . You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition." (Doc. 2-25 at 6). This clause was included in all subsequent agreements between Roby and TitleMax. At the evidentiary hearing, a representative from

TitleMax testified that TitleMax would not enter a pawn agreement with a customer that indicated an intent to file bankruptcy.

On a monthly basis following the initial pawn, Roby renewed her agreement with TitleMax without redeeming her vehicle. On March 21, 2021, Roby once again renewed her pawn agreement with TitleMax. Under the terms of the renewal, Roby could redeem her vehicle through a payment of $8,210.73 on or before April 20, 2021, the maturity date. Roby renewed her pawn agreement with TitleMax for a final time on April 23, 2021. This agreement allowed Roby to redeem her vehicle through a payment of $8,210.73 on or before May 23, 2021, the maturity date. TitleMax offered to lend Roby additional cash with this renewal, but Roby rejected the offer. Later in the day on April 23, 2021, Roby filed a Chapter 13 bankruptcy petition.

Roby admits that she intended to file her Chapter 13 bankruptcy petition at the time she entered the April 23 pawn agreement with TitleMax. In fact, Roby retained a bankruptcy attorney and provided him pertinent filing information prior to signing the April 23 agreement. Roby completed a credit counseling course—a pre-requisite to filing Chapter 13 bankruptcy—on April 22, 2021. At no point during the pawn renewal process did Roby inform TitleMax that she intended to file a Chapter 13 petition.

Roby's Chapter 13 plan listed TitleMax as a secured creditor on the vehicle. TitleMax objected to the confirmation of Roby's Chapter 13 plan and TitleMax's classification within the plan as a secured creditor.[1] TitleMax argued that Roby did not

---

[1] TitleMax's objection stemmed from its belief that the case fell under *In re Northington* rather than *In re Womack*. This distinction, as well as its impact on the bankruptcy proceeding, is discussed in greater detail below.

3

file her Chapter 13 plan in good faith because of the misrepresentation she made regarding Clause 22(j) of the April 23 agreement. On remand from the initial appeal, TitleMax argued for the first time before the bankruptcy court that Roby defaulted on the April 23 pawn agreement prior to filing for bankruptcy.

## DISCUSSION

Although TitleMax frames nine issues on appeal, each of its arguments challenge two findings made by the bankruptcy court: 1) that Roby was not in default of the April 23 pawn agreement at the time she filed for bankruptcy and 2) that Roby proposed her Chapter 13 plan in good faith.[2] Because the bankruptcy court made errors, according to TitleMax, the vehicle was improperly included as a part of Roby's bankruptcy estate.

The heart of TitleMax's appeal stems from the distinction between *In re Womack*, 2021 WL 3856036 (11th Cir. Aug. 30, 2021), and *In re Northington*, 876 F.3d 1302 (11th Cir. 2017).[3] Under *Womack*, a debtor that files bankruptcy while party to an unmatured pawn agreement—an agreement that has not yet reached its maturity date—transfers her possessory and ownership interests in the relevant property to her bankruptcy estate. *Womack*, 2021 WL 3856036 at *2. While the pawnbroker maintains a security interest in the relevant property, that interest is subject to the debtor's bankruptcy protections. Thus, the property receives the protection of the automatic stay, the debtor maintains her right to

---

[2] On appeal, TitleMax appears only to challenge whether the bankruptcy court properly determined that Roby proposed her Chapter 13 plan in good faith, not whether she filed her bankruptcy petition in good faith.

[3] The Court recognizes that *Northington* is binding precedent, while *Womack* is not. However, the issue here is not which case this Court must follow. Each case analyzes claims based on the specific facts presented and the procedural posture. To resolve TitleMax's appeal, the Court must determine whether this case, based on the facts presented and the procedural posture, is most analogous to *Northington* or *Womack*.

modify her interest in the property in a Chapter 13 plan, and the estate's interest in the property is not impacted by forfeiture or the statutory redemption period. *Id.* at *3.

However, if a debtor files bankruptcy after the maturity date of the pawn agreement expires, *Northington* applies. *Id.* In that situation, the bankruptcy estate inherits the debtor's statutory right to redeem the property subject to the pawn agreement. *See Northington*, 876 F.3d at 1310–11. However, the automatic stay does not freeze the statutory redemption period. *Id.* at 1314–15. Thus, the redemption period continues to run, subject to the sixty-day extension granted by federal law, *see* 11 U.S.C. § 108(b), after the debtor files her bankruptcy petition. *Northington*, 876 F.3d at 1313. When the statutory period expires, the property is forfeited to the pawnbroker and does not receive the protection of the automatic stay. *Northington*, 876 F.3d at 1315.

TitleMax asserts that Roby's bankruptcy estate possessed only a statutory right to redeem the vehicle under *Northington*. In support of this proposition, TitleMax argues that Roby defaulted on her April 23 pawn agreement before she filed her bankruptcy petition. Additionally, TitleMax argues that the bankruptcy court erred in confirming Roby's Chapter 13 plan because Roby did not propose that plan in good faith. For the reasons that follow, the Court finds that the bankruptcy court is due to be AFFIRMED.

**A. Pre-Petition Default**

Roby's pawn agreement provided that she "will be in default if [she] made any false representation warranty, promise, or provision in or in connection with entering into this Agreement." (Doc. 2-34 at 2). As discussed, Clause 22(j) of the pawn agreement required Roby to "represent[], warrant[], acknowledge[] and agree[]" that she did not intend to file for

5

bankruptcy. (Doc. 2-25 at 6).  Because Roby did intend to file for bankruptcy when she signed the April 23 pawn agreement, TitleMax argues that Roby made a false representation by acknowledging Clause 22(j).  Accordingly, TitleMax argues that Roby defaulted by the terms of the pawn agreement before she filed her bankruptcy petition.[4]  Thus, TitleMax argues, the vehicle did not become part of Roby's bankruptcy estate under *Northington*.

However, TitleMax fails to articulate how the bankruptcy court's finding to the contrary was clearly erroneous.[5]  Instead, TitleMax states that "[t]he bankruptcy court failed to consider whether the Debtor's pre-petition default triggered the redemption period of her pawn agreement." (Doc. 7 at 6).  To the contrary, the bankruptcy court noted that TitleMax failed to raise this argument in its written objections. (Doc. 2-22 at 9).  The bankruptcy court also reasoned that "[a] general allegation of . . . breach of contract is not a typical basis for an objection to confirmation." (Doc. 2-22 at 10).  Ultimately, the bankruptcy court found that Roby did not default by breaching her pawn agreement.  TitleMax acknowledges that the bankruptcy court made this finding and has failed to demonstrate that this finding was clearly erroneous.[6]  Accordingly, the bankruptcy court is due to be AFFIRMED as to this finding.

---

[4] Notably, TitleMax waived this argument in its initial appeal before this Court. *TitleMax of Ala. v. Roby*, 2022 WL 4349313, at *6 (M.D. Ala. Sept. 19, 2022).  This Court is skeptical that TitleMax may raise this argument on a second appeal following a remand ordered on other grounds.

[5] TitleMax also argues that Roby's failure to respond to its argument regarding default constitutes abandonment of any defense to this argument.  TitleMax's argument in favor of abandonment, at a posture where it must demonstrate that the bankruptcy court committed clear error, is not compelling.

[6] Of note, TitleMax continues to argue that Roby made a false representation when renewing her pawn agreement.  However, the pertinent language in the pawn agreement prohibits a "false representation warranty."  TitleMax has failed to show that the bankruptcy court made a clearly erroneous interpretation of these terms as defined by the pawn agreement.

6

### B. Good Faith Determination

Additionally, TitleMax contends that the bankruptcy court erred in determining that Roby proposed her Chapter 13 plan in good faith. "A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (citation omitted). Under a clearly erroneous standard, "the factual findings of a trial court must be allowed to stand unless the reviewing court is left with the definite and firm impression that a mistake has been made." *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1534 (11th Cir. 1983) (citing *Morgado v. Birmingham-Jefferson Cnty. Civ. Def. Corp.*, 706 F.2d 1184 (11th Cir. 1983)).

In determining whether a debtor proposed her plan in good faith, the bankruptcy court must consider:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and h[er] dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and h[er] sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in h[er] earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

>   (10) the circumstances under which the debtor has contracted h[er] debts and h[er] demonstrated bona fides, or lack of same, in dealings with h[er] creditors;
>
>   (11) the burden which the plan's administration would place on the trustee.

*In re Kitchens*, 702 F.2d 885, 888–89 (11th Cir. 1983).

TitleMax argues that Roby did not propose her Chapter 13 plan in good faith because she did not enter her April 23 pawn agreement in good faith. In particular, TitleMax objects to the bankruptcy court's analysis of the tenth *Kitchens* factor. In TitleMax's view, "[t]he bankruptcy court incorrectly downplayed the Debtor and her counsel's misconduct, overlooking dishonesty in the incurring of the debt, while magnifying other *Kitchens* factors that were not in dispute." (Doc. 7 at 11). TitleMax's arguments demonstrate that TitleMax disagrees with the bankruptcy court's analysis. However, they do not establish that the bankruptcy court committed legal error.

In analyzing whether Roby proposed her Chapter 13 plan in good faith, the bankruptcy court applied the appropriate eleven-factor *Kitchens* test. The bankruptcy court noted that this analysis focuses on the totality of the circumstances. Under the totality of the circumstances, the bankruptcy court reasoned that "most of the factors [were] not disputed and . . . weigh[ed] in favor of finding good faith." (Doc. 2-22 at 22). Amongst additional facts that supported the bankruptcy court's determination, the bankruptcy court considered that Roby's "income and expenses were not criticized," that Roby was "sincere in [her] motivation for seeking bankruptcy relief," that Roby "did not file [her] . . . plan solely to avoid [her] debt[] to TitleMax," and that "Roby [proposed] to pay 100% to unsecured creditors." (*Id.* at 23–25).

TitleMax primarily takes issue with the bankruptcy court's analysis of the tenth

8

*Kitchens* factor. The tenth factor examines "the circumstances under which the debtor has contracted [her] debts and [her] demonstrated bona fides, or lack of same, in dealings with [her] creditors." *Kitchens*, 702 F.2d at 889. The bankruptcy court acknowledged in its analysis that "incurring a debt on the eve of bankruptcy may be indicative of bad faith." (Doc. 2-22 at 26). Nevertheless, the bankruptcy court examined the totality of the circumstances and determined that Roby sought to repay her debt to TitleMax, not thwart it. In finding that Roby did not lack bona fides in her conduct, the bankruptcy court considered the nature of Roby's ongoing relationship with TitleMax. Ultimately, the bankruptcy court found that Roby's "pre-petition behavior, viewed in the totality of the circumstances, [did] not result in a finding a bad faith in filing [her] plan[]." (*Id.* at 28). Although TitleMax disagrees with the bankruptcy court's *Kitchens* analysis,[7] it cannot show that the bankruptcy court clearly erred in making its factual finding that, under the totality of the circumstances, Roby proposed her plan in good faith. Accordingly, the bankruptcy court is due to be AFFIRMED.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order confirming the Appellee Roby's plan is AFFIRMED.

DONE this 18th day of October, 2023.

                                                /s/ Emily C. Marks
                                          EMILY C. MARKS
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Although TitleMax challenges some of the bankruptcy court's considerations under the tenth *Kitchens* factor, challenging the bankruptcy court's independent rationale under one factor is insufficient to show that the bankruptcy court's ultimate factual findings were clearly erroneous such that its *Kitchens* analysis was legally incorrect.

9